[L. A. No. 26681. In Bank. Apr. 18, 1963.]

RETAIL CLERKS UNION, LOCAL 770, AFL-CIO, Plaintiff and Respondent, v. THRIFTIMART, INC. Defendant and Appellant; CUSTOMERS FINANCE COMPANY, Intervener and Appellant.

McLaughlin & McLaughlin, Joseph M. McLaughlin and Frederick A. Morgan for Defendant and Appellant.

Hill, Farrer & Burrill, Carl M. Gould, Stanley E. Tobin and Barry R. Weiss for Intervener and Appellant.

Arnold, Smith & Schwartz, George L. Arnold, Kenneth M. Schwartz and Laurence D. Steinsapir for Plaintiff and Respondent.

TRAYNOR, J.—Retail Clerks Union, Local 770 brought this action under Code of Civil Procedure section 1287 (now § 1285) for confirmation of an arbitrator's award. Customers Finance Company (doing business and hereinafter referred to as MORE) was granted leave to intervene in the confirmation proceedings. Thriftimart and MORE appeal from the judgment confirming the award on the grounds that the award invades the exclusive jurisdiction of the National Labor Relations Board and denies MORE due process of law.

Thriftimart operates about 60 retail food stores in the Los Angeles area. The collective bargaining agreement between it and Local 770 expressly applies to "all locations" of Thriftimart.

In May 1961 Thriftimart procured the incorporation of The W.I.T. Company with an authorized capital stock of 20,000 shares, of which 18,660 were issued. The W.I.T. Company then exchanged all of its issued stock for 67,854 shares of Thriftimart stock. W.I.T. in turn exchanged the Thriftimart stock for the physical assets of Consumers Finance Company. As a result of these transactions, Thriftimart owns all of the issued stock of W.I.T., W.I.T. owns the assets of Customers Finance Company (consisting of four discount department stores), and Customers Finance Company owns 67,854 shares of Thriftimart stock. Thereafter, Customers Finance Company transferred its corporate name and its trade name (MORE) to W.I.T. It is the new MORE that is involved in this action.

After these transactions were carried out, Local 770 asserted that the collective bargaining agreement between it and Thriftimart covered certain employees of MORE. Thriftimart disputed that contention, but agreed with Local 770 to submit to arbitration (1) the question of arbitrability; (2) the issue on the merits: "Does the Collective Bargaining Agreement between the Employer and the Union, by its terms,

apply to and cover employees of . . . MORE, employed in the appropriate classifications covered by the said contract and within the territorial area of the union, because of its acquisition by Thriftimart?'' Thriftimart reserved the right to move to dismiss the proceeding on the ground that the substantive issue was not arbitrable.

The contract provided that questions of arbitrability ''shall be determined in the first instance by the arbitrator . . .'' and broadly committed to arbitration ''any and all matters of controversy, dispute or disagreement of any kind or character existing between the parties and arising out of or in any way involving the interpretation or application of this Agreement. . . .''

The arbitrator found the issue arbitrable. On the merits, the arbitrator found it ''clear from the . . . contract . . . that the parties intended the contract to apply to any new location . . .'' and that MORE's stores were such ''new locations'' within the meaning of the contract.

■ We are faced at the outset with the contention that neither this court nor the arbitrator has jurisdiction of this dispute since it involves questions of ''representation'' and ''appropriate bargaining unit'' assigned by the Labor Management Relations Act (29 U.S.C. §141 et seq.) exclusively to the National Labor Relations Board. (See 29 U.S.C. § 159.)

Since both Thriftimart and MORE are engaged in interstate commerce, this litigation is within the purview of section 301(a) of the Labor Management Relations Act. (29 U.S.C. § 185(a).) The cases cited for the board's exclusive jurisdiction are not persuasive in view of the recent decision by the United States Supreme Court in *Smith* v. *Evening News Assn.* (1962) 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246]. In that case an employee brought an action against his employer for damages resulting from the latter's alleged violation of a collective bargaining agreement. The trial court sustained the employer's motion to dismiss for want of jurisdiction on the ground that the allegations, if true, would make out an unfair labor practice and that therefore the subject matter was within the exclusive jurisdiction of the National Labor Relations Board. The Supreme Court reversed, holding that the preemption doctrine did not apply to cases arising under collective bargaining agreements, even though ''the alleged conduct of the employer . . . concededly, is an unfair labor practice within the jurisdiction of the National Labor

424

Relations Board. The authority of the board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts under § 301.'' (83 S.Ct. at pp. 268-269 [9 L.ed.2d at p. 249]. See *Local 174, Teamsters, etc. of America* v. *Lucas Flour Co.,* 369 U.S. 95, 101 n.9 [82 S.Ct. 571, 7 L.Ed.2d 593, 598]; *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 504 [82 S.Ct. 519, 7 L.Ed.2d 483, 485]; *Atkinson* v. *Sinclair Refining Co.,* 370 U.S. 238 [82 S.Ct. 1318, 8 L.Ed.2d 462]; Sovern, *Section 301 and the Primary Jurisdiction of the NLRB,* 76 Harv. L. Rev. 529, 532-544 (1963).)

The cases upon which Thriftimart and MORE rely (*Local 1505, International Brotherhood etc. AFL-CIO* v. *Local Lodge 1836, Intl. Assn. of Machinists,* 304 F.2d 365, cert. granted, 371 U.S. 908 [82 S.Ct. 255, 9 L.Ed.2d 169]; *Local 1357, Retail Clerks Intl. Assn.* v. *Food Fair Stores, Inc.,* 202 F.Supp. 322; *International Chemical Workers Union, Local 6* v. *Olin Mathieson Chemical Corp.,* 202 F.Supp. 363; and *International Union of Doll & Toy Workers* v. *Metal Polishers, etc., AFL-CIO,* 180 F.Supp. 280), were decided before the Supreme Court's decision in *Smith* v. *Evening News Assn., supra,* and rest upon the premise, squarely rejected in the latter case, that the parties could not by private agreement oust or limit the jurisdiction of the board. The Supreme Court, however, recognizes the jurisdiction of both the courts and the board. (371 U.S. 195 [83 S.Ct. at p. 269, 9 L.Ed.2d at p. 249].)

It is nevertheless contended that the *Smith* case recognizes judicial competence to decide contract actions that involve past unfair labor practices only, but does not authorize courts to make determinations that involve the risk of compelling the commission of unfair labor practices. It is urged that arbitrators and courts are not competent to determine whether the Thriftimart-Local 770 collective bargaining contract applies to MORE, for an erroneous decision of that issue would compel the parties to apply the collective bargaining contract to MORE's employees in violation of section 8 of the Labor Management Relations Act (29 U.S.C. § 158). (See *Masters-Lake Success, Inc.,* 124 N.L.R.B. 580.) We are not persuaded that the United States Supreme Court would make the suggested distinction. Bargaining unit issues are commonly provided for in collective bargaining contracts and are therefore commonly adjudicated by arbitrators (see Cum-

mings, *NLRB Jurisdiction and Labor Arbitration*: *"Uniformity" vs. "Industrial Peace,"* 12 Labor Law Journal 425, 429); national labor policy favors the settlement of labor disputes by arbitration *(United Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564 [80 S.Ct. 152, 4 L.Ed.2d 118]); and an erroneous decision in a contract action involving a past unfair labor practice may result in the continued commission of that practice. Accordingly, we hold that the court's jurisdiction to decide contract actions *(Charles Dowd Box Co.* v. *Courtney, supra; McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45, 60 [315 P.2d 322]) is not displaced by the jurisdiction of the National Labor Relations Board to remedy unfair labor practices (29 U.S.C. § 160) or to designate appropriate bargaining units (29 U.S.C. § 159).

The validity of MORE'S contention that the decision of the arbitrator in a proceeding to which it was not a party and without notice to or consent by MORE is a denial of due process of law depends on whether the arbitrator's award affects MORE. In an attempt to forestall adjudication of this issue, Local 770 "concedes that the judgment in its present form applies to and can be enforced only against the party Thriftimart." It is obvious, however, that enforcement of the award against Thriftimart would be enforcement against MORE, for the award provides that the contract between Thriftimart and Local 770 covers MORE and its employees. In this regard, it is significant that Local 770 is now seeking to compel specific enforcement of the award in another action.* Thus, through proceedings nominally directed against Thriftimart alone, Local 770 seeks to affect MORE's dealings with its employees. The source of Local 770's asserted power to affect MORE is the arbitration proceeding to which MORE was not a party. Accordingly, MORE may properly challenge the legality of that proceeding.

The question is one of federal law. *(Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]; *Local 174, Teamsters, etc. of America* v. *Lucas Flour Co.,* 369 U.S. 95, 102 [82 S.Ct. 571, 7 L.Ed.2d 593, 598].) Local 770 contends that the *Steelworkers* cases *(United Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564 [80 S.Ct. 152, 4 L.Ed.2d. 118]; *United Steelworkers* v. *Warrior & Gulf N. Co.,* 363 U.S.

---

*The action was stayed as premature on Thriftimart's petition for a writ of mandate. *Thriftimart, Inc.* v. *Superior Court,* 202 Cal.App.2d 421 [21 Cal.Rptr. 19].

574 [80 S.Ct. 1347, 4 L.Ed.2d 1409]; *United Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424]) compel confirmation of the award and prohibit judicial review of both the issue of arbitrability and the merits of the award. This argument overlooks the premise upon which those cases rest: the consensual nature of arbitration. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . . The judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." (363 U.S. at pp. 582-583 [4 L.Ed.2d 1417].)

In the *Steelworkers* cases, the Supreme Court sought to insulate consensual labor arbitration from judicial intervention. The arbitrator's decision on the merits is not to be disturbed, "even through the back door of interpreting the arbitration clause. . . " (363 U.S. at p. 585 [4 L.Ed.2d 1419]), for it was the arbitrator's judgment of what the parties agreed to that was bargained for. In the present case, however, MORE was not a party to the collective bargaining contract and did not join in the submission of the controversy to the arbitrator. Thus, the crucial issue is whether there can be a valid arbitration award in the absence of a party directly affected by the award. The substantive federal law of collective bargaining agreements affords no solution to this question. "Until it is elaborated by the federal courts we assume it does not differ significantly from our own law." (*McCarroll* v. *Los Angeles County etc. Carpenters*, 49 Cal.2d 45, 60 [315 P.2d 322].)

In *Retail Clerks Local 428* v. *L. Bloom Sons Co.*, 173 Cal. App.2d 701 [344 P.2d 51], the union sought to compel L. Bloom Sons to arbitrate whether their collective bargaining contract applied to "Bloom's Salinas, Inc.," which the union claimed was being operated by L. Bloom Sons. In that case as in this one the union did not establish that the subsidiary was the *alter ego* of the parent corporation as a prerequisite to enforcing the parent's agreement against the subsidiary. "The proper forum for that determination is, of course, a court of law." (173 Cal.App.2d at p. 703; *Minton* v. *Cavaney*, 56 Cal.2d 576, 579, 581 [15 Cal.Rptr. 641, 364 P.2d 473]; *Motores De Mexicali, S.A.* v. *Superior Court*, 51 Cal.2d 172, 176 [331 P.2d 1].) The court affirmed dismissal of the union's petition on the ground that Bloom's Salinas, Inc. was an indispensable party. "Appellant contends that the is-

sue must be determined by the arbitrator because it involves a controversy arising out of the contract. . . . It is conceded that respondent and Bloom's Salinas, Inc., are separately incorporated. Bloom's Salinas, Inc., is not a party to the contract. It did not consent to have this issue decided by an arbitrator rather than by a court of competent jurisdiction. Appellant is, in effect, urging the patently absurd proposition that two parties can by contract effectively stipulate for the mode of determination of the rights of a third party who has not only not assented to such a mode of determination but who also is not even accorded an opportunity to participate in such determination." (173 Cal.App.2d at p. 703.)

Local 770 attempts to distinguish the *Bloom* case on the ground that it involved a suit to compel arbitration, whereas in the present case Local 770 and Thriftimart agreed to submit the issue of arbitrability to the arbitrator in the first instance. MORE, however, did not agree to that submission, and it is therefore not bound by it.

The judgment is reversed and the trial court is directed to vacate the award pursuant to Code of Civil Procedure, section 1286.2, subdivision (d).

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.