**PHILADELPHIA LITHOGRAPHERS & PHOTOENGRAVERS' INTERNATIONAL UNION, LOCAL 7–P**

v.

**PARADE PUBLICATIONS, INC.**

Civ. A. No. 71–2395.

United States District Court, E. D. Pennsylvania.

Dec. 19, 1972.

Edward Davis, Davis, Casper & Muller, P. C., Philadelphia, Pa., for plaintiff.

David H. Marion, Harold E. Kohn, Philadelphia, Pa., for defendant.

## OPINION

HIGGINBOTHAM, District Judge.

The question presented in these motions for summary judgment is whether the defendant parent corporation, which

is a signatory to a collective bargaining agreement with the plaintiff union, can be compelled to arbitrate plaintiff's claim that the union is entitled to be recognized as the representative for the employees of defendant's subsidiary where said subsidiary maintains a separate corporate identity and has already recognized, pursuant to its own labor-management policies, a different exclusive bargaining representative for its employees. For reasons which hereinafter appear, defendant's motion for summary judgment is hereby granted and defendant cannot be compelled to submit to arbitration the status of its subsidiary's employees.

Jurisdiction of this court is predicated on Section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a).[1]

The facts can be briefly summarized as follows:[2] The plaintiff Philadelphia Lithographers and Photoengravers' International Union, Local 7–P [hereinafter referred to as "plaintiff" or "Local 7–P"] is a union representing employees in the photoengraving industry, including 32 of the approximately 158 employees of defendant Parade Publications, Inc. [hereinafter called "Parade"].[3] Parade, a corporation with offices located at 511 North Broad Street, in Philadelphia, is engaged in the rotogravure photoengraving industry, publishing a Sunday newspaper supplement entitled "Parade", pursuant to contract with various newspapers.

Over a number of years, Local 7–P and the photoengraving-unit employees at Parade have conducted joint collective bargaining negotiations with the photoengraving-unit employees at the Triangle Publications, Inc. [hereinafter "Triangle"] plant at 440 North Broad Street, which is located directly across the street from Parade's plant. Any agreements reached between Local 7–P, on the one hand, and Parade and Triangle, on the other, have been ratified by a joint vote of the photoengraving-unit employees at those two Philadelphia plants.

The Gravure Division of Triangle had entered into a collective bargaining agreement with Local 7–P, which was in full force and effect from August 15, 1969 to February 29, 1972. On February 19, 1970, Local 7–P and Parade, in recognition of the foregoing agreement between Triangle and plaintiff, executed an agreement adopting the same terms and provisions for Parade's photoengraving-unit employees as negotiated for the Gravure Division of Triangle, except that certain features of the pension plan for Parade were different.

Among the provisions contained in the collective bargaining agreement negotiated by plaintiff and Triangle (and similarly agreed to by Parade) were clauses relating to union recognition,[4] jurisdic-

1. Section 301(a) of the Labor Management Relations Act of 1947 provides:

   "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. The parties have stipulated that there is no material issue of fact in dispute for purposes of determination of their respective motions for summary judgment. Fed.R.Civ.P. 56, 28 U.S.C. Rule 56.

3. Local 7–P is one of six unions representing a segment of the production and maintenance employees at Parade.

4. Article I of the Parade—Local 7–P agreement provides in relevant parts:

   "RECOGNITION

   Section 1. This agreement shall be binding in its entirety upon the Employer signatory hereto and employees within the jurisdiction of the Union as provided in Article II. The working conditions as herein set forth shall obtain generally in the production of rotogravure as described in Sections 2 and 3 or Article II following.

   Section 2. The employer recognizes the Philadelphia Lithographers and Photoengravers Union, Local No. 7–P of the Lithographers and Photoengravers Inter-

tion,[5] new machines or processes,[6] and arbitration.[7]

Diversified Printing Corporation [hereinafter "Diversified"] a wholly-

national Union as the exclusive bargaining agency for all employees engaged in performing work as described in Sections 2 and 3 of Article II following.

Section 3. No individual contracts conflicting with this Agreement shall be entered into unless by consent and after approval of both parties hereto. Such contracts shall not conflict with the Constitution and General Laws of the Lithographers and Photoengravers International Union, or the local union a party hereto."

5. Article II states in pertinent parts:

"JURISDICTION

Section 1. Employees engaged to do the work as defined in Section 2 following shall be employed in accordance with the terms and conditions hereinafter set forth.

Section 2. The jurisdiction of this Agreement is the process of Rotogravure Photoengraving and the attendant work thereto and is defined, for the purpose of this Agreement, as being all parts of the process pertaining to the production of Rotogravure Photoengravings from copy as received by the Company up to the finished cylinders or plates, including photography, color scanning, making of masks or color separation and drop-out processes, retouching, opaquing, grinding of positives, laying out, printing and transferring, sensitizing of carbon tissues, staging, finishing, etching and re-etching, plating and grinding of cylinders, marking proofs for corrections, dechroming, the operation of electronic plate making devices or any new plate making machinery or equipment which may be introduced, the making of acetate color proofs, the making of blue, silver and velox prints and the exposure, making and development of autotypes or film of a similar nature.

Section 3. Any copy or material delivered to the Rotogravure Department for the purpose of producing Rotogravure for printing purposes shall serve as copy for the initial photographic process as presently practiced unless otherwise mutually agreed and shall thereafter be processed and completed by the Rotogravure Department.

\*　　\*　　\*　　\*　　\*

Section 5. The jurisdiction of the Union, as heretofore recognized by the parties to this Agreement, shall be preserved insofar as lawfully possible. Nothing in this Agreement shall be construed as adding to or taking away from

the jurisiction, as historically or presently practiced in the operations of the Company."

6. Article XVII provides:

"New Machines or Processes

Section 1. The Company agrees that in the event of the installation of new or improved machines or processes for work covered in the Jurisdiction clause of this contract, such machines or processes must be operated by employees covered under this contract and under a scale of wages and conditions provided for elsewhere in the Agreement. The Company further agrees to give the Union ninety (90) days' notice in writing prior to the installation of any such equipment or adoption of new processes and during such ninety (90) days to meet with the Union at any time upon request for consideration of the manning of such machines or handling of such processes, the conditions of work, and any other matter relating thereto.

In the event that agreement cannot be reached within the ninety (90) day period set forth, such equipment shall be operated at the Employer's option. In the event a final determination is not reached within sixty (60) days the issue may be processed in accordance with the procedure provided in the Grievance and Arbitration Article.

Any changes whenever finally adopted shall be retroactive to the date of beginning of operation of such equipment or processes.

It is the intent of the parties that the above language covers brand new equipment or processes which make a startling impact on the industry. It does not mean changes such as an improved camera, better chemicals, new lens, etc."

7. Article XVIII states:

"GRIEVANCE AND ARBITRATION

Section 1. All questions of difference concerning an interpretation of this Agreement and all questions arising between the Employer and his employee, including discharge disputes, which cannot be amicably adjusted in conciliation, shall be submitted to an Arbitration Committee composed of two (2) representatives of the Union and two (2) representatives of the Employer. If this Committee fails to reach an agreement within two (2) weeks after the submission of all facts, said four (4) members shall choose a fifth (5th) member who

owned subsidiary of Parade, owns and operates a commercial printing plant in Atglen, Pennsylvania. At all relevant times, Diversified and Parade, in the operation of their respective plants at Atglen and Philadelphia, have made no joint purchases of materials or equipment; have transferred no employees between their plants; have maintained separate sales organizations; have conducted separate labor relations programs; and have entered into no joint ventures with third parties. None of the employees at Diversified had been previously employed by Parade. Further, the construction and establishment of Diversified has not caused any reduction of the work printed by Parade, nor has Parade reduced the number of its employees.

The approximately 158 employees at Atglen are represented by the International Brotherhood of Pulp, Sulphite and Papermill Workers, Local Union 185, pursuant to a collective bargaining agreement with Diversified entered into on December 7, 1970. The agreement is for three years, remaining in effect until November 6, 1973, and from year to year thereafter unless terminated by 60-day notice of either party.

The Parade plant prints only Parade Magazine, except for occasional printing of advertising flyers for customers of newspapers which use the Parade Magazine supplement. Parade prints in Philadelphia approximately 33 percent of its weekly publication and contracts out the remainder of its weekly printing requirements to various plants: 28 percent to Standard Gravure, Louisville, Kentucky; 22 percent to Diversified; and 17 percent to Gravure West, Los Angeles, California. At all times relevant hereto, Parade has dealt with Diversified in the same manner as it, Parade, has transacted with other third-party printers to whom it contracts out the printing of its magazines. Diversified's printing of Parade magazines is done at a profit to Diversified in accordance with a contract establishing a price schedule. Diversified additionally prints more copies of Family Weekly, a magazine in competition with Parade, than it does copies of Parade Magazine.

shall be a disinterested party and who shall serve as Arbitrator. The fifth member shall be selected as expeditiously as possible, but if not selected within two (2) weeks as a result of the failure of the local Committee to agree, then the selection of an Arbiter shall be referred, upon the request of either party, to the American Arbitration Association, in accordance with its rules governing selection of an Arbitrator. During the time of said arbitration no strike or lockout shall be engaged in by either party to this Agreement. The decision of the fifth member, when signed by a majority of the arbitration board, shall be final and binding on both parties, and shall be rendered, if possible, within thirty (30) days after the addition of the fifth member.

The Constitution and Laws of the Philadelphia Lithographers and Photoengravers International Union shall not be subject to arbitration.

Section 2. In consideration of the foregoing arrangements for the adjustment of grievances or settlement of disputes, both parties to this Agreement accept this procedure as the sole and exclusive method of seeking adjustment or redress, prior to instituting any proceedings in courts of equity or laws, provided both parties fully comply with the aforesaid terms of this Article.

In addition to any arrangements herein contained for the adjustment of grievances or settlements of disputes, the parties to this Agreement agree that the Union shall set up a grievance committee, not to exceed five (5) in number, which committee shall bring any grievance, which, in the opinion of said committee, requires discussion and adjustment, to the attention of the superintendent as soon as possible. If not satisfactorily adjusted by him, they shall be referred immediately to the General Manager of the Gravure Division and the Personnel Director of Triangle Publication, Inc. In the event that such grievance, after submission to management, remains unsettled in a period of ten (10) days after submission, then the parties may mutually agree to submit the grievance to the Arbitration Committee provided for in Section 1 of this Article."

It should be further noted that although Local 7–P was aware of the construction of the Atglen plant, plaintiff never suggested any relevance of this new facility to the collective bargaining agreement at the time when it was negotiated on February 19, 1970. Moreover, since the expiration on February 29, 1972 of the previous Parade-Local 7–P contract and the beginning of negotiations for a new contract between Parade and plaintiff, the union has concerned itself only with the working conditions of the photoengraving-unit of employees at the Parade plant and has not inquired into the status of the employees at Atglen.

In view of the aforementioned facts plaintiff's complaint alleges that: the Atglen plant is an expansion of Parade's facilities; that the employees at Diversified perform the same work as employees at Parade's Philadelphia plant; that the collective bargaining agreement between Local 7–P and Parade includes those employees at Diversified; and, finally, at a minimum, Parade should be compelled to submit plaintiff's claim for union recognition of Diversified's employees to arbitration in accordance with the arbitration clause of their collective bargaining agreement. Parade has steadfastly refused to arbitrate these particular contentions.

Since 1957 when the United States Supreme Court decided Textile Workers v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), federal courts have been obligated by § 301(a) of the Labor Management Relations Act of 1947 to enforce the arbitration provisions of collective bargaining agreements. The Court there recognized the agreement of the employer to arbitrate particular grievances as being the *quid pro quo* for the correlative agreement of the union not to strike over the same grievances.

■ In subsequent cases, the federal courts have been additionally assigned the responsibility for initially determining whether the parties have contractually agreed to arbitrate the contested grievances and if the arbitration clause on its face governs those disputes. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). It is not the court's role to make an independent examination of the merits of the dispute. Id. Moreover, before the court can deny an order to arbitrate it must have "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," resolving any doubts in favor of coverage. United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 581–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). *Accord, e. g.,* United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320–1321, 8 L.Ed.2d 462 (1962);[8] John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546–547, 84 S. Ct. 909, 912–913, 11 L.Ed.2d 898 (1964); Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 253–254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970); Avco Corp. v. Local Union No. 787 of the International Union, U. A., A. & A. Imp. Wkrs., 459 F.2d 968, 973 (3rd Cir. 1972).

■ The precise question raised in this litigation has been previously decid-

8. While the companion decision of Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962) was overruled by Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the discussion in the latter decision pertaining to the accommodation of the anti-injunction provisions of the Norris-La

Guardia Act, 29 U.S.C. § 104, with the right of labor parties to enforce arbitration provisions under § 301 of the Labor Management Relations Act of 1947, did not affect the holding in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320–1321, 8 L.Ed.2d 462 (1962).

ed by the Third Circuit adversely to the plaintiff union. Local 464, American Bakery and C. Wkrs. I.U. v. Hershey Chocolate Corp., 266 F.Supp. 276 (M.D. Pa.1967), 310 F.Supp. 1182 (M.D.Pa. 1970), aff'd. per cur. 433 F.2d 926 (3rd Cir. 1970).

In *Hershey, supra,* the Court concluded that the parent corporation, Hershey, which was a party to a collective bargaining agreement with Local 464, did not have to arbitrate the union's claim for recognition of the employees of Hershey's subsidiary, Reese Candy Company, even though the union contended that the subsidiary's operations had been "increasingly integrated" with the operations of Hershey. The arbitration clause in *Hershey,* as in the instant case, was drawn in very broad terms. In the former, "any matters which an employee may desire to discuss and adjust with the Employer" could be arbitrated, as opposed to the language provided in the instant clause: "All questions of difference concerning an interpretation of this *Agreement and all questions arising between the Employer and his employee . . . which cannot be amicably adjusted in conciliation, shall be submitted to an Arbitration Committee. . . ."*

In construing the language of the arbitration clause in *Hershey, supra,* the Court stated:

"* * * It is perfectly obvious that the phrase 'any matters' is subject to the *good* faith limitation that the 'matters' in question be related to the employer-employee relationship as that relationship is set forth in the aforementioned bargaining agreement since (1) the clause only refers to the employee and the employer and (2) the conjunctive is used to join 'discuss' and 'adjust', thus implying that the matter must be within the employer's power to correct. Here, the plaintiff seeks to include within the ambit of the agreement another corporation and another set of employees and have this other corporation and other employees, who, incidentally, within the

past year voted not to be represented by this very Union, covered by the Hershey contract. By no stretch of imagination could this be found to contain something that a Hershey employee may in good faith ask the employer to 'discuss and adjust'. It is completely outside of the employer-employee relationship which paragraph 9 was designed to protect." 266 F.Supp. at 277.

It might plausibly be argued that the instant arbitration clause should be given a broader construction than the one in *Hershey,* since the latter's coverage was restricted to consideration of employer-employee disputes, whereas the former clause permitted examination into differences in interpretation of the collective bargaining agreement. That line of argument, however, was also rejected in Hershey:

"The issue which the Union wants to arbitrate does not involve the employer-employee relationship at defendant's Hershey plant, nor does it involve an interpretation or application of the collective bargaining agreement between the Union and Hershey, it seeks to encompass the relationship between Hershey and Reese. See also two recent California cases, Retail Clerks Union Local 428 v. L. Bloom Sons Company, Inc., 173 Cal. App.2d 701, 344 P.2d 51; and Retail Clerks Local 770 v. Thriftimart, Inc., 59 Cal.2d 421 [30 Cal.Rptr. 12,] 380 P.2d 652 (1963). Both of these cases are similar to the instant case and in both the Court held that the proper forum for determination of the issue was the Court and not an arbitration." 266 F.Supp. at 278.

In following the *Hershey* decisions, I am confining my analysis in the case at bar to the contractual language of the collective bargaining agreement and have not scrutinized the merits of the dispute. While it is permissible for the court to consider the past practice and bargaining history of the parties to a collective bargaining agreement when the contract is ambiguous and equivocal

and the Court seeks to clarify the parties' contractual intent, thus thereby ascertaining whether there was specific consensus relative to the arbitrability of the disputed grievances, the Court in the second *Hershey* decision concluded that, wholly apart from the merits and examination of collateral evidence, the contract on its face precluded arbitration of issues affecting the employees of the parent's subsidiary. 310 F.Supp. at 1185–1189.

Numerous cases have been brought to the Court's attention by the defendant which discuss the merits of this case, but which are only tangentially related to the issue before me, namely, the applicability of arbitration. There are two cases cited by the plaintiff which, however, deserve more extensive comment, the first being John Wiley & Sons, Inc. v. Livingston, *supra*.

In *Wiley*, the Supreme Court held that in a merger situation, the surviving corporation, Wiley, could be compelled to arbitrate with the union about the employee conditions of employees formally associated with Interscience, Wiley's predecessor. The significance of the decision is that Wiley was *not* a signatory to the collective bargaining agreement between the union and Interscience. Although the Supreme Court did require arbitration there, it recognized there would be instances where a similar holding would be inapplicable. Compare *Wiley*, *supra*, 376 U.S. at 551, 84 S.Ct. at 915, with a non-arbitration case involving a non-signatory to a collective bargaining agreement, National Labor Relations Board v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 1581, 32 L.Ed.2d 61 (1972).

Since *Wiley* was discussed in one of the lower court decisions pertaining to *Hershey*, *supra*, 266 F.Supp. at 278, the Court of Appeals for the Third Circuit was obviously aware of *Wiley* and its implications, hence evidently concluding that a reasonable distinction can be drawn between merger and parent-subsidiary arrangements. 433 F.2d at 927. Furthermore, it should have been equal-ly apparent to the Court of Appeals that Hershey *was* a signatory and party to the collective bargaining agreement with the union (as is true in the instant case), and therefore the contractual hurdle (Wiley was not a party to the collective bargaining agreement) and concomitant limitations present in *Wiley*, were absent in *Hershey*.

The second case meriting further remarks is Parade Publications, Inc. v. Philadelphia Mailers U. No. 14, 459 F.2d 369 (3rd Cir. 1972). *Parade Publications* involves the same employer and same subsidiary, but a different union with a different collective bargaining agreement. The issue raised in that case was whether under the circumstances therein alleged the District Court Judge, applying the standards of *Boys Markets*, *supra*, could enjoin the union from striking over the employer's failure to arbitrate. In remanding the case, the Court of Appeals held that before the union can be enjoined, the Court was required to determine the cause of the strike and whether the underlying issue was arbitrable.

The counsel of record for Parade in *Parade Publications*, *supra*, also represent Parade in the instant case. During argument before the District Court Judge, Mr. Harold Kohn, one of the attorneys for Parade, stated that Parade was prepared to go to arbitration over the issue of whether the pressmen and mailers at Parade were entitled to preferential employment at Diversified. 459 F.2d at 371. The Court of Appeals, nonetheless, concluded:

" * * * Parade in this case did not affirmatively allege that the strike was over an arbitrable issue. When asked at the hearing whether Parade conceded that the situation at Diversified presented an arbitrable issue under the collective bargaining agreements, Parade's counsel refused to commit himself and suggested that an arbitrator might properly determine that question in the future." Id. at 373 (footnote omitted).

Even if there had been a concession by Parade's counsel in the other case, no such statement or representation has been made here, and all the parties are not identical. My decision here, therefore, is not necessarily dispositive of the issue in *Parade Publications*.[9]

In reliance upon *Hershey, supra,* defendant's motion for summary judgment is hereby granted.

---

9. Since *Parade Publications* has been remanded, no further hearings have been conducted by the District Court with regard to the arbitrability of the underlying issue of the strike.