## NAPA PITTSBURGH, INC.

### v.

## AUTOMOTIVE CHAUFFEURS, PARTS & GARAGE EMPLOYEES, LOCAL UNION NO. 926, et al.

### Civ. A. No. 73-764.

United States District Court,
W. D. Pennsylvania.

Sept. 11, 1973.

David Perez, Pittsburgh, Pa., for plaintiff.

---

Herman Foreman, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

SNYDER, District Judge.

In this case the plaintiff employer, NAPA Pittsburgh, Inc., has sought a temporary restraining order and also injunctive relief against the defendant, Local Union No. 926, Automotive Chauffeurs, Parts and Garage Employees and its officers, restraining them, and all of those in participation with them, from participating in a work stoppage, and seeking mandatory arbitration of an alleged dispute which the plaintiff asserts grows out of, and is covered by, the Collective Bargaining Agreement between the plaintiff and the defendant.

A temporary restraining order was refused and the matter came on for an evidentiary hearing on September 7, 1973. At that time, and primarily by stipulation, it was determined that there was a valid and subsisting labor agreement entered into between the NAPA Pittsburgh Warehouse, Inc. and the Superior Motor Parts Division, including its branch stores located at Northside Pittsburgh; Southside Pittsburgh; Wilkinsburg, Sharpsburg and 6550 Hamilton Avenue, and the Automotive Chauffeurs, Parts & Garage Employees Local Union No. 926, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Under the provisions of Article XI "Any and all grievances, complaints or dispute arising between the Employer and the Union or any employee represented by the Union and covered by this Agreement shall be settled in the following manner". There is then set forth a procedure for filing a complaint or a grievance, a conference between the Steward and a representative of the Employer, a report from the Steward should the matter fail of agreement, a three day period for attempt to adjust the same with the Employer, upon failure to reach agreement, then either party could request that the same be submitted within forty-eight hours to a board made up of two representatives selected by each party for the purposes of hearing and attempting adjust the matter. In the event the matter could not be adjusted, then the same was to be subject to arbitration by an arbitrator selected by each of the parties, who in turn would select a neutral arbitrator. If the two could not agree upon an neutral arbitrator then the Director of the U.S. Mediation and Conciliation Service was to be requested to name a panel of five suggested neutral arbitrators. The arbitrators named by the parties would then select the neutral arbitrator by each arbitrator eliminating two of the arbitrators on the suggested panel as submitted. "There shall be no cessation of work during the pendency of the grievance proceedings."

There is another pertinent provision of the Contract, and that is, that under Article XIII: "It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action in the event an employee refused to enter upon any property involved in a primary labor dispute or refuses to go through or work behind any primary picket lines, including the primary picket line of Unions party to this Agreement and including primary picket lines at the Employer's place or places of business."

NAPA employs approximately one hundred and ten employees at its Hamilton Avenue place of business and of these approximately fifty-four are represented for the purpose of collective bargaining by Local Union No. 926. The present effective contract does not expire until May 31, 1974.

On August 29, 1973 NAPA Altoona, Inc. (hereinafter referred to as Altoona) entered into an agreement with Teamsters, Chauffeurs and Helpers Local 110, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, to conduct a representation election on October 5, 1973 among the warehousemen

and truck drivers employed by Altoona, at its Duncanville facility. This agreement was approved August 30, 1973 by the Regional Director of Region 6 of the National Labor Relations Board.

On September 5, 1973 at approximately 7:30 A.M. members of Local 110 commenced picketing the plaintiff's premises at 6550 Hamilton Avenue, Pittsburgh, Pennsylvania. With the exception of approximately seven union members who initially reported to work and then left, all union members employed by NAPA in Pittsburgh have refused to cross the picket line in support of Local Union 110's demand for recognition at Altoona. The testimony shows that Local 926 instructed its members that it would not be a violation of its contract if any of the members refused to enter upon the premises at 6550 Hamilton Avenue because this was a primary picket line and the contract specifically provided that it would not be a cause for discharge or disciplinary action for an employee to refuse to enter the premises where there was a primary picket line.

This Court is called upon to once again balance the rigid standards as applied in the Steelworkers Cases (where only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail—United Steelworkers of Amercia v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409) and the restrictions of the Boys Markets principle which must guide this Court in granting injunctive relief: (Boys Markets, Inc. v. Retail Clerk's Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)).

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that

the contract *does* have that effect; and the employer shall be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance." 398 U. S. at 254, 90 S.Ct. at 1594, 26 L.Ed.2d at 212.

Pursuant to the holding in *Boys Markets, supra,* we first examined the Agreement. There can be no doubt that any grievances, complaints or disputes arising between the employer and the union, or any employee represented by the union, were subject to the arbitration procedure. It may be noted that the rationale underlying the Agreement was that the parties were desirous of entering into this Agreement as to wage rates and conditions of employment "to do away with the possibility of strikes, boycotts, lockouts and the like". It is thus perfectly clear that the intent of the parties was to employ arbitration as the mechanism for the settlement of the industrial disputes as set forth in the Agreement without resort to self-help measures. Consistent with this intent, the Court holds that the arbitration procedures established therein are mandatory within the meaning of *Boys Markets.*

Having determined that the arbitration is mandatory, the next question to be considered by the Court is whether the matter in dispute between the parties is treated by the terms and conditions of the Agreement and is, therefore, arbitrable. The alleged dispute in the instant case concerns the honoring of another union's picket line. The Local contends that they are entitled to honor the "110" picket line while the Company contends that the union in ob-

serving the picket line is in violation of the "No Cessation of Work Clause" in its Agreement. The Company of course alleges that the work stoppage is in violation of the Collective Bargaining Agreement and the Company is willing to settle the question of the scope of the No Cessation Clause through contractual grievance arbitration procedure, and that the Company will suffer irreparable injury if the work stoppage continues. We are not proceeding in uncharted waters here, for we deem this case to be comparable with the case of Amstar Corporation v. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO et al., 468 F.2d 1372 (5th Cir. 1972). In that case, Amstar Corporation had a collective bargaining contract with Amalgamated for its Chalmette refinery. Local unions affiliated with the International Longshoremen's Association represented employees at Amstar's refineries in Brooklyn, Philadelphia, and Boston. In early January 1972 following expiration of its collective bargaining contracts, Amstar employees in the three cities went on strike. ILA stationed pickets around Chalmette, and having been advised of their rights by the union, the Chalmette employees refused to cross the ILA picket line and remained away from work. In the opinion filed by Circuit Judge Dyer the following appears:

> "The strike by the Chalmette employees was not 'over a grievance' which the parties were contractually bound to arbitrate. Rather, the strike itself precipitated the dispute—the validity under the Union's no-strike obligation of the member-employees honoring the ILA picket line. Were we to hold that the legality of the very strike sought to be enjoined in the present situation constituted a sufficiently arbitrable underlying dispute for a *Boys Market* injunction to issue, it is difficult to conceive of any strike which could not be so enjoined. The *Boys Market* holding was a 'narrow one,' not intended to undermine the vitality of the anti-injunction provi-

sion of the Norris-LaGuardia Act. Indeed, the Supreme Court specifically stated that is (sic) decision did not mean 'that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance'."

This Court is acutely aware of the difference in wording of contracts, such as in Hershey (Local 464, American Bakery and Confectionery Workers International Union, AFL–CIO v. Hershey Chocolate Corporation, 266 F.Supp. 276 (M.D.Pa.1967); 310 F.Supp. 1182 (M.D.Pa.1970), affirmed Per Curiam 433 F.2d 926 (3d Cir. 1970)) which applied an arbitration procedure "to any matters which an employee may desire to discuss and adjust with the Employer" which could not require arbitration for employees of a subsidiary company; and the language contained in Philadelphia Lith. & Photo. Int. U., L.7–P v. Parade Pub., Inc., 352 F.Supp. 634 (E.D.Pa. 1972), where the language was "All questions of difference concerning an interpretation of this Agreement and all questions arising between the Employer and his employee . . . which can not be amicably adjusted in conciliation, shall be submitted to an Arbitration Committee. . . . ."

We must then again come back to the question whether the underlying dispute in this case, that is the right of the Local Union to refuse to cross the picket line is a grievance, complaint or dispute arising between the Employer and the Union "and covered by this Agreement".

The Contract contained, under Article XIII, a specific provision for picket lines. In light of this specific provision it would seem that the question of the right to cross a picket line was made part of the Agreement over which the arbitration clause became a compulsory method of procedure which this Court must enforce.

It is noted that it is not the Court's role to make an independent examination of the merits of the dispute and we have

not done so. We have confined ourselves solely to an analysis of the case at bar through the contractual language of the Collective Bargaining Agreement as set forth by the parties. In concluding that we must grant the injunction to compel arbitration of the question before this Court we believe we are completely following the dictates of our Circuit Court of Appeals in Parade Publications, Inc. v. Philadelphia Mailers U. No. 14, 459 F.2d 369 (1972) when that Court specifically set forth that the Court on an evidentiary basis must make findings which include that the strike is over an arbitrable issue.

The final consideration compelled by *Boys Market* involves the principles of equity. Will the employer suffer irreparable injury by continuance of the work stoppage? Will the employer suffer more from a denial of the injunction than will the union from its issuance?

The evidence at the hearing in this matter is uncontroverted that the productivity of the company was brought to a screeching halt during the alleged work stoppage, and that the company would suffer irreparable injury from continuance of the alleged work stoppage. It is further clear that the company would suffer considerably more from the denial of the injunction than the union would from its issuance. The union may still press any grievance in the matter anticipated by the parties to arbitration. The equities of this case lie heavily in favor of arbitration because it is this Court's opinion that dilligent and meaningful negotiation can bring about more lasting and permanent results than by resort to self-help measures such as were attempted in this case.

For the foregoing reasons, the injunction will issue and the parties will be ordered to participate in arbitration over the right of the union to recognize the picket line and thus bring about a work stoppage affecting the operations of

NAPA Pittsburgh, Inc. at its place of business at 6550 Hamilton Avenue, Pittsburgh, Pennsylvania.

An appropriate order will be issued.