[Civ. No. 34284. First Dist., Div. Three. Apr. 15, 1975.]

FERNE E. SEVEY, Plaintiff and Appellant, v.
AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO, Local 829 et al.,
Defendants and Respondents;
COUNTY OF SAN MATEO, Intervener and Respondent.

## Counsel

Michael D. Silber for Plaintiff and Appellant.

Levy, Van Bourg & Hackler, Van Bourg, Allen, Weinberg, Williams & Roger, Victor J. Van Bourg and Stewart Weinberg for Defendants and Respondents.

No appearance for Intervener and Respondent.

## Opinion

**GOOD, J.\***—Ferne E. Sevey was a member of Peninsula Association of Public Employees (PAPE), an independent employees' organization which had been certified in 1971 to represent employees of San Mateo County's clerical unit in negotiations with the county pursuant to California's Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.). PAPE later became affiliated with Service Employees International Union (SEIU) and became Local 715, SEIU, AFL-CIO. In March 1972, another union, American Federation of State, County and Municipal Employees (AFSCME) filed a petition to decertify Local 715. An election was held. AFSCME won and became Local 829 AFSCME, AFL-CIO and the representative of said clerical unit.

There is indication in the record that PAPE's affiliation with SEIU occurred during the pendency of the election. Under national AFL-CIO

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

policy, when a member union absorbs an independent employees' organization, the union succeeds to the representation rights of the independent organization.

An internal dispute arose and, pursuant to the AFL-CIO constitution, SEIU demanded arbitration of the question whether AFSCME had won its status in violation of article XX, the no-raiding clause, of the AFL-CIO constitution, article XX spells out arbitration procedures to resolve claimed violations. SEIU's petition was filed in Washington, D.C., AFL-CIO headquarters, and the proceedings were processed there. The union umpire found that AFSCME had violated the no-raiding clause. AFSCME accordingly sent letters to Ms. Sevey and other members of Local 829 informing them that it could no longer represent them. There is evidence that, until then, Sevey and other employees similarly affected were not aware of the arbitration.

On December 5, 1972, Sevey filed a petition in the Superior Court of San Mateo County wherein she sought a writ of mandate on behalf of herself and other members of Local 829 to require said union to continue its representation of the clerical unit. The petition contains no reference to Local 715. Local 829's answer, filed December 14, admitted virtually all of the key allegations of the petition but asked that the writ be denied. On December 15, Local 715 filed a complaint in intervention wherein it alleged that both unions were bound by said AFL-CIO constitution and that Sevey and others, by reason of their membership in Local 829, were also bound thereby. Details of their dispute and its arbitration were set forth. Interveners prayed that the petition be dismissed, that the decision of the arbitrator be affirmed and that Local 829 be ordered to withdraw from seeking to represent the clerical unit.[1]

On December 18, San Mateo County filed its complaint against both Locals 829 and 715. It alleged that it was then ready to negotiate employment terms for the clerical unit but could not do so until the dispute between the two locals was settled. It alleged that it had adopted rules and regulations pursuant to said section 3507 of the Government Code for the exclusive recognition of employee organizations formally recognized pursuant to a vote of employees in appropriate representation

---

[1]The clerk's transcript does not show that leave to intervene was granted. The SEIU complaint is merely endorsed "Recd 12/15/73." However, Sevey demurred thereto and all subsequent proceedings indicate that Local 715 had intervened. No issue is raised as to said intervener's standing and despite the clerical informality the intervention was treated as though it had been perfected.

units and that such election was held between April 25 and May 2, 1972, and resulted in the recognition and certification of Local 829.

The county's rules and regulations provided that representation elections could not be held at intervals of less than three years. The forced withdrawal of Local 829 potentially left the county's clerical unit without representation because two years would have to elapse before another election could be called. The county asked that the court determine whether the 1972 election was valid and, if so, to order Local 829 to continue its representation in current negotiations; if invalid, that it order Local 715 to assume such representation; or, that the court formally order the county to recognize some employee organization as representing the clerical unit or make such other orders as might be necessary to protect the rights of the county and clerical unit in the untoward situation that had been created. It appears that the county was inviting the court possibly to order a new election in contravention of its own rules and regulations, if that appeared to be the only viable solution.

After hearings, judgment was entered which required Local 829 to continue representation of the clerical unit in the pending negotiation but any memorandum of understanding (contract) would be effective only upon ratification by majority vote of the clerical unit and should not be effective beyond December 31, 1973. It ordered that on or before June 15, 1973, the county should conduct an election to determine the employees' preference as to representation, after which the county was required to recognize the organization then chosen for not less than two years thereafter.

The judgment does not contain any recitals as to the validity of either the prior election or of the arbitration order but the judgment implies a finding that the arbitration was valid. The memorandum of decision states that Local 715 had advanced "a number of reasons why it should not be shorn of the fruits of its arbitration victory" by the court and that the court was in agreement with a number of them. It also stated that although the county asked the court to ignore the arbitration order by determining the validity of the election won by Local 829 it "could find no basis upon which to declare the election invalid . . . nor in equity . . . ignore the arbitration award inasmuch as both unions submitted to the jurisdiction of the arbitrator." The court's solution of the dilemma presented by the certification of Local 829 vis-a-vis the arbitration order that, because of "raiding," it could not represent the clerical unit, in effect, found the arbitration order binding on the unions but stayed its

enforcement in order that the county and clerical unit could firm up a contract for the current year and then settle the matter of representation during the balance of the three-year period of the old certification by a new election.

Appellant Sevey filed this appeal from that part of the judgment which recognized the arbitration order by providing for a new election, thus limiting Local 829's representation to the date of completing current negotiations. Her briefs contain an eloquent and sometimes witty dissertation on the rights of a member of a local union as against a parent international. The ideas advanced may be factually and sociologically sound but are more appropriately addressed to the legislative rather than to the judicial branch of government. The following legal issues are presented:

1. *Do the arbitration provisions of AFL-CIO's constitution for the resolution of disputes arising under the no-raiding clause of article XX require that members of local AFL-CIO affiliated unions be joined as indispensable parties? No.*

■ The articles of agreement and constitutions of both local and international unions constitute a contract with union members that is binding on them. (*Mandracio* v. *Bartenders Union, Local 41* (1953) 41 Cal.2d 81, 85 [256 P.2d 927]; *DeMille* v. *American Fed. of Radio Artists* (1947) 31 Cal.2d 139, 146 [187 P.2d 769, 175 A.L.R. 382]; *De Gonia* v. *Building Material etc. Union* (1957) 155 Cal.App.2d 573, 581 [318 P.2d 486]; *Miller* v. *Internat. Union etc. Engineers* (1953) 118 Cal.App.2d 66, 68-69 [257 P.2d 85].) Because he is bound by the union constitution, a member is usually required to exhaust his intra-union remedies before resorting to the courts (*De Gonia* v. *Building Material etc. Union, supra; Local 2608, etc.* v. *Millmen's Local 1495, etc.* (N.D. Cal. 1958) 169 F.Supp. 765), unless the union violates its rules or resort to them would be futile. (*Mooney* v. *Bartenders Union Local No. 284* (1957) 48 Cal.2d 841, 843-844 [313 P.2d 857].)

■ Although there is a potential conflict between employees' rights to choose a bargaining representative and union no-raiding agreements, the latter are recognized and enforced by the courts after an arbitration award, as a matter of *contract. (N.L.R.B.* v. *Weyerhaeuser Company* (7th Cir. 1960) 276 F.2d 865, 875; *United Textile Workers* v. *Textile Workers Union* (7th Cir. 1958) 258 F.2d 743.) The *Weyerhaeuser* case, cited by appellant, upheld the National Labor Relations Board's refusal to

consider an affirmative defense based on a no-raiding clause, because the matter had never been submitted to arbitration so there was no award, and one of the contending locals had disaffiliated itself from the AFL-CIO. Its holding that the board could ignore the no-raiding clause was limited to that "narrow factual situation." (*Weyerhaeuser, supra,* 276 F.2d·865, 875.) *Weyerhaeuser* noted that *United Textile Workers* was based on a contract right. *(Id.)* That case specifically enforced an arbitrator's no-raiding decision by requiring a local to withdraw a representation petition.

Appellant's union, AFSCME, was a party to the arbitration and bound by its decision. Appellant cites no case authority for the proposition that member employees are indispensable parties to an arbitration under said article XX's machinery to resolve internal jurisdictional disputes that arise where "raiding" has been charged by one local against another. Said constitution does not require notice to members of either union involved. We find no reason for a court to promulgate such a requirement.

Appellant mistakenly relies on *Culinary Workers & Bartenders U., Local 814* v. *Salatich* (C.D. Cal. 1970) 318 F.Supp. 1047; *Retail Clerks Union* v. *Thriftimart, Inc.* (1963) 59 Cal.2d 421 [30 Cal.Rptr. 12, 380 P.2d 652]; and *Retail Clerks Union* v. *L. Bloom Sons Co.* (1959) 173 Cal.App.2d 701 [344 P.2d 51]. But each of these cases involved successor *employer organizations* and the question was whether the employer's collective bargaining agreement applied to a new business. Whether or not a successor business organization is so bound (and consequently bound by an arbitration clause of such agreement) turns upon factors entirely unrelated to the case at hand. Reliance is also placed on *Local 2608, etc.* v. *Millmen's Local 1495, etc., supra,* 169 F.Supp. 765. But there the court merely declined to exercise its extraordinary injunctive powers to protect a plaintiff union because of its laches and its failure to make sufficient effort to obtain redress within the framework of union procedures (cf. pp. 768-769). The case is really authority for the proposition that union procedures have validity and are recognized in courts.

Other cases cited by appellant are equally distinguishable and irrelevant. In one of them, *Clark* v. *Hein-Werner Corp.* (1959) 8 Wis.2d 264 [99 N.W.2d 132, 100 N.W.2d 317], a union arbitration purporting to settle grievances over seniority was voided because the affected parties, who had no notice of the proceedings, were found *not to have been fairly*

*represented* by a union *whose interests were in direct conflict with the employees' interests.* The case succinctly states the rationale for holding that members of a local are not indispensable parties to arbitration of a jurisdictional dispute where, at 99 N.W.2d 135, the court says: "Sound public policy dictates that a court should not interfere with or disturb the orderly working of the arbitration process unless a compelling reason for invoking the court's equitable powers is presented. One of the principal purposes of arbitration is to reach a speedy final result and to avoid protracted litigation."

"Arbitration proceedings by agreement of the parties are highly favored to encourage persons to avoid delay by obtaining adjustment of their differences in a forum of their own choosing. . . . Every reasonable intendment will be indulged to give effect to arbitration proceedings." (*Turner* v. *Cox* (1961) 196 Cal.App.2d 596, 602-603 [16 Cal.Rptr. 644]; *Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 840 [97 Cal.Rptr. 100]; *Walter* v. *National Indem. Co.* (1970) 3 Cal.App.3d 630, 633 [83 Cal.Rptr. 803].) "An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." (Code Civ. Proc., § 1287.6; *Jones* v. *Kvistad, supra.*)

Here appellant's interests were completely coincident with AFSCME's. She does not attempt to show they were not. Because arbitration is favored, in the absence of any contrary showing, it must be assumed she was fairly represented. She elected not to challenge the arbitration either through union procedures, grievance procedures, testing under Code of Civil Procedure section 1285 et seq., or equivalent federal statutes. In this kind of collateral attack on an arbitration award, the court's authority is limited to the questions of whether the arbitrator had jurisdiction, which he had, and whether Sevey was an indispensable party, which she was not.

2. *Should this court order a change in union arbitration procedure requiring employees to have notice and an opportunity to appear? No.*

Appellant did not ask for this relief below, but asked only that the arbitrator's decision be ignored. On appeal she apparently asks this court to promulgate a rule of law that in all future AFL-CIO internal disputes proceedings, employees must be given notice and an opportunity to appear. Courts should be extremely reluctant to intervene by creating procedural rules to govern the volatile tensions that inhere in such

disputes. The matter is best left to the rule-making authority of the unions involved or to the legislative branch of government.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.