**PARADE PUBLICATIONS, INC.**

v.

**PHILADELPHIA MAILERS UNION NO. 14 et al., Appellants.**

**No. 71–1107.**

United States Court of Appeals, Third Circuit.

Argued Jan. 19, 1972.

Decided May 1, 1972.

Bernard N. Katz, Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., for appellants.

David H. Marion, Harold E. Kohn, P. A., Philadelphia, Pa., for appellee.

Before ADAMS and JAMES ROSEN, Circuit Judges, and STAPLETON, District Judge.

## OPINION OF THE COURT

STAPLETON, District Judge.

The defendant unions ("the unions") appeal from a final judgment below which enjoined work stoppages by them at the premises of the plaintiff employer, Parade Publications, Inc. ("Parade"). Parade initially filed a verified complaint and affidavit in a state court; a temporary restraining order was entered. The unions removed to the United States District Court for the Eastern District of Pennsylvania, and a hearing was held on Parade's application for a preliminary injunction. A preliminary injunction was entered. On November 30, 1970 defendants stipulated to the entry of a final decree. The final paragraph of the stipulation provided:

"3. The entry of such final order shall be without prejudice to the right of the defendants to appeal therefrom and this Stipulation shall not be construed as an agreement by the defendants with regard to the validity of said final decree (or prior temporary restraining order or preliminary injunction)."

Parade's complaint did not allege that there was a dispute between the parties which they were bound to arbitrate under the terms of an existing collective bargaining agreement. It alleged that "no labor dispute exists between plaintiff and defendants nor is there a labor dispute between plaintiff and its employees." The complaint asserted, however, that the strike was in violation of "no strike" clauses in existing collective bargaining agreements between the parties and should be enjoined. The unions, at the hearing on the application for a preliminary injunction, represented to the court that there was a dispute which gave rise to the strike and characterized it as follows:

"[I]t actually arises out of the fact that Parade Publications, which is the plaintiff in this case, has entered into some sort of arrangement via a dummy corporation known as Diversified Printing out in Chester in which it has kept the unions which are involved here totally, absolutely in the dark, refused to allow their members to apply for work out in the Diversified operation and which Parade ultimately views as being the overall printing effort of the Parade-Diversified structure, the net result being that employment at Parade will disappear and employment at other similar enterprises throughout the country will disappear into a plant that will be represented by an organization other than these two organizations and which will be manned by people other

than members of these two organizations."

During the hearing on the application for a preliminary injunction, the following exchange occurred between the court and counsel:

"THE COURT: There is nothing in your complaint that says you are willing to arbitrate.

MR. KOHN [Counsel for Parade]: We don't know what they want to arbitrate. Whatever they want to arbitrate, I can state to you, and it is one of the things we will prove here, that we are prepared to go to arbitration, and, in the state court, of course, that allegation was not necessary.

I don't know what they want to arbitrate. We are ready to arbitrate whatever it is that they want to arbitrate.

Actually the grievance will be shown, if we ever get to the necessity of taking evidence, and that is what Mr. Lauffer is going to testify to, they wanted to go through the other plant Friday afternoon. They had already been through it earlier the preceding week. There was an important meeting going on, and they had been told Thursday they could go through it Monday, Tuesday, or Wednesday of the following week. They then said, we will pull the men out of the Philadelphia plant. That is what this is about. . . .

MR. KATZ [Counsel for the Pressmen's Union]: If Your Honor please, I may be able to resolve this. In view of what Mr. Kohn has said, we may find ourselves on the brink of an agreement between the parties as to how to dispose of this.

It is our contention under all of the circumstances our pressmen and mailers members and employees at Parade are entitled to preferential employment at Diversified. It is our contention that we are entitled to recognition at Diversified and to certain other attributes at Diversified.

If Mr. Kohn is willing to submit that to arbitration, it comes as a surprise to me. We will certainly accept that order and proceed to arbitration. I don't think he is saying that.

MR. KOHN: If Your Honor please, as I have indicated, it is a broad arbitration clause. They can take to arbitration anything they want. Whether the arbitrator will decide with them, whether he will hold it is or is not a proper matter, is entirely up to him.

\* \* \* \* \* \*

THE COURT: All right, anything further?

MR. KATZ: If Your Honor please, I don't believe I received a response to my question to Mr. Kohn, because that is the issue. As we read the contract, we are afraid that the contract does not bestow upon either of the defendant unions the right to submit to an arbitrator the question of whether or not it is just and proper under all of the circumstances to give preferential employment rights to the new Diversified plant and to give certain recognition and other rights to the two local unions involved at Parade.

If I understood Mr. Kohn is offering to arbitrate that, then we certainly would be happy to proceed to arbitration, but I didn't understand him to say that.

THE COURT: All right, this will be the disposition:

I have concluded on the basis of the stipulated facts and the matters set forth of record, together with the arguments of counsel, number one, that the temporary restraining order should remain in effect as the preliminary injunction of this Court, pending further order of this Court, until final hearing, and pending final disposition of this matter by this Court.

The temporary restraining order is supplemented by adding thereto the condition that either party is at liberty to commence arbitration proceedings with respect to any dispute which

underlies this alleged walkout, and that both sides will comply with all of the arbitration provisions of the collective-bargaining agreement.

The continuance of this preliminary injunction is conditioned upon the employer, the plaintiff, fulfilling its obligations to arbitrate, as set forth in the contract."

No testimony was taken at the hearing and no affidavits were submitted pertaining to the cause of the strike.

The unions assert that the underlying "issues relate to the representation, recognition and hiring problems at a physically separate corporate subsidiary" of Parade. They argue that there was no finding by the court below that these issues were subject to the arbitration procedures of the collective bargaining agreements and state that "it would seem that they were not so subject." In the absence of such a finding, the unions maintain that this case does not come within the doctrine announced in Boys Market, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199 (1970), and that the Norris-LaGuardia Act deprived the lower court of jurisdiction to act as it did.[1]

In connection with this contention, the unions emphasize the following admonition of the Supreme Court in the Boys Market case:

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined *because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect;* and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike." 398 U.S. at 254, 90 S.Ct. at 1594.

Parade, on the other hand, maintains (1) that the unions, by virtue of their stipulation to a final judgment below, waived any right to assert that the judgment was not supported by adequate findings and (2) that Parade was entitled to an injunction based upon the undisputed facts below [2] because the strike itself raised an independent arbitrable issue. As we understand it, Parade in its second argument asserts that the issue of whether the strike violated the general, no strike "under all circumstances" clause of the contracts was an arbitrable issue which the parties were bound to arbitrate, and that the parties had agreed in a separate covenant that there would be no strikes during such arbitration proceedings.

Parade's first argument presents a close question. We conclude, however,

[1.] The unions also assert that the question of whether or not the work stoppages violated the no-strike provisions of the collective bargaining agreements is one for an arbitrator and could not properly be decided by the court below.

[2.] The following facts relied upon by Parade in support of this contention were uncontested before the court below:
1. The grievance-arbitration provision of the Pressmen's Contract provides for arbitration of "any dispute," without limitation. The Mailers contract similarly refers to "all differences." These provisions are mutually binding.
2. There are two separate no-strike provisions in each contract. The first proscribes strikes "pending the settlement of a dispute and . . . arbitration." The second, independent one requires that:
"Under all circumstances the business of Employer must be carried on in a regular and orderly way without interruption. There shall be no strike of any nature, walkout, lockout, picketing, boycott, or other forms of interferences with the peaceful operation of all departments."
3. The unions called a strike at Parade's Philadelphia plant, not at the Chester facility.
4. Parade was threatened with irreparable harm while no commensurate injury would result to the unions from the entry of the injunction sought.

because of the wording of the stipulation and the particular context in which it was entered that the unions should not be foreclosed from pressing before this Court the error they allege on this appeal. As will appear hereafter, we. interpret the court's rulings at the end of the hearing on the preliminary injunction as indicating a legal conclusion that a District Court may enjoin a strike without specifically determining what grievance caused the strike and whether that grievance was an arbitrable one under an existing collective bargaining agreement. The clearly stated position of the unions was that without such findings the Norris-LaGuardia Act deprived the court of jurisdiction to enjoin the strike. In this context, we conclude that the reservation in the stipulation was intended to preserve the union's right to press its legal point on appeal. Accordingly, we turn to an examination of the unions' contention.

This Court has recently had occasion to review the *Boys Market* decision and the cases leading up to it. Avco Corporation v. Local Union No. 787 of International Union, 459 F.2d 968 (3rd Cir. 1972). We concluded that "the Supreme Court specifically narrowed its holding to the situation where there existed a 'no strike' clause and where the strike was sought to be enjoined because it was over a grievance which both parties were bound to arbitrate." The purpose of *Boys Market* doctrine is to encourage peaceful settlements of disputes by arbitration. An "arbitrable issue" as well as a "no strike" clause is required under the *Boys Market* decision because the justification which the court there found for restricting the scope of the Norris-LaGuardia Act was "that the unavailability of equitable relief *in the arbitra-*

*tion context* presents a serious impediment to the congressional policy favoring the voluntary establishment of . a mechanism for the peaceful resolution of labor disputes . . .". (Emphasis supplied.) 398 U.S. 253, 90 S.Ct. 1593–1594.

An employer seeking an injunction has the burden of proving that he comes within the *Boys Market* doctrine. He must provide the Court with an evidentiary basis for making the findings required by that case as a prerequisite to the issuance of an injunction. Parade in this case did not affirmatively allege that the strike was over an arbitrable issue.[3] When asked at the hearing whether Parade conceded that the situation at Diversified presented an arbitrable issue under the collective bargaining agreements, Parade's counsel refused to commit himself and suggested that an arbitrator might properly determine that question in the future. We think that this was not enough. Under *Boys Market* the court entertaining an application for an injunction must, at least in the first instance, determine from facts presented to him that the strike is over an arbitrable issue.

In this case, we cannot find that the employer provided the requisite proof or that the court made the requisite findings. As Parade stresses, the preliminary injunction was subject to two conditions: (1) that either. party was "at liberty to commence arbitration proceedings with respect to any dispute which underlies this alleged walkout" and (2) that the employer fulfill "its obligations to arbitrate, as set forth in the contract." These conditions, however, do not in our judgment evidence a finding by the court as to what caused the strike and whether the underlying issue

3. We do not suggest that an employer must always plead facts showing the cause of a strike. He well may not know at the time he files his complaint. Moreover, if the union refuses to divulge the reason for the strike this may in some circumstances relieve the employer of his burden of proving, and the court of its responsibility to affirmatively find, the cause. See Morning Telegraph v. Powers, No. 71 Civ. 949 (S.D. N.Y.1971). Such was not the case here, however, since the unions expressly stated their position with respect to the dispute which occasioned the strike.

is arbitrable. We conclude that the case should be remanded for the court to hear evidence and determine these issues.

■ Parade's argument that the strike itself clearly created an arbitrable issue of whether the union had violated the general "no strike" clause does not require a different result for two reasons. First, it is apparent from the court's reference to "any dispute which underlies the alleged walkout" that it did not rest its decision to issue an injunction upon a finding that the strike itself created an issue which the parties have bound themselves to arbitrate. Second, this argument of Parade goes beyond anything decided in the *Boys Market* case. Indeed, if the Diversified situation caused the strike and does not present an issue which the parties have bound themselves to arbitrate, it would run contrary to the rationale of *Boys Market* to grant Parade an injunction. We read the opinion in that case to indicate that arbitration should be encouraged by permitting judicial enforcement of a "no strike" clause when the underlying issue is arbitrable, but that there should be no injunction if the underlying dispute is not arbitrable.

■ We express no view as to whether the underlying dispute in this case is one which the parties have bound themselves to arbitrate. If the situation at Diversified is the underlying issue there may be some justification for the unions' "fear" that it may not present an arbitrable issue. On the other hand, the arbitration clauses in these collective bargaining agreements are broad in scope and Parade is entitled to the benefit of the "strong presumption in favor of arbitrability" discussed by this Court in Avco Corporation v. Local Union No. 787 of International Union, 459 F.2d 968, 973 (3rd Cir. 1972). The District Court must in the first instance, decide these issues.

The judgment will be vacated and the case remanded for further proceedings consistent with this opinion.