**In re CATAMOUNT DYERS, INC., Debtor.**

**CATAMOUNT DYERS, INC., Plaintiff,**

**v.**

**LOCAL 341 OF the INTERNATIONAL LADIES GARMENT WORKERS UNION, AFL–CIO, Defendant.**

**Bankruptcy No. 82–00160.**
**Adv. No. 82–0150.**

United States Bankruptcy Court,
D. Vermont.

Sept. 25, 1982.

**60**

Arthur J. O'Dea, and Joseph O'Dea, Manchester Center, for debtor-plaintiff.

John F. McMahon of Angoff, Goldman, Manning, Pyle & Wanger, P.C., Boston, Mass., and Michael T. Schein of Hoff, Wilson, Powell & Lang, P.C., Burlington, Vt., for defendant.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

Upon the Verified Complaint of the Debtor, Catamount Dyers, Inc., supported by the Affidavit of its president, Ernest J. Michel, and its Memorandum of Law, all of which were filed on September 13, 1982, and after a preliminary hearing on that date, this Court entered a Temporary Restraining Order prohibiting the Defendant, Local 341 of the International Ladies Garment Workers Union, AFL–CIO, from directly or indirectly engaging in a strike against the Plaintiff and engaging in other activities allegedly in violation of the Collective Bargaining Agreement between the Plaintiff and the Defendant.

This Restraining Order required the Defendant to appear on September 23, 1982 and show cause why there should not be an extension of the restraints contained in this Order. An Answer was filed on September 23, 1982 and on the same date, the Defendant moved to amend the Answer which, without objection by the Plaintiff, was granted.

An evidentiary hearing was held at which the following facts were established:

The Debtor was engaged in the textile business for some time prior to the filing of its Petition for Relief under Chapter 11 on July 8, 1982.

On or about July 1, 1980 the Plaintiff and the Defendant entered into a so-called Collective Bargaining Agreement which under Article VII provided for an hourly increase for union employees of 35¢ effective September 1, 1982. Article XXIV prohibits the Union from calling, authorizing or ratifying a strike or stoppage during the life of the agreement except for the employer's failure to submit to final and binding arbitration or to comply with the decision of an arbitrator or with the settlement of a dispute reached by representatives of the parties. Article XXV makes provision for the settlement of disputes exclusively by arbitration and prohibits the bringing of any action or proceeding in a court of law or equity other than to compel arbitration, as provided in the agreement, or with respect to the award of an arbitrator.

These Articles XXIV and XXV are modified by Article XXI entitled "NON–PAYMENTS—RESPONSIBILITY" reading in part as follows:

"1. Notwithstanding Articles XXV and XXIV or any other provision of this agreement, if the Employer fails for fourteen (14) calendar days after receipt of written notice of delinquency from an authorized representative of the Union sent to the Company via registered mail return receipt requested to pay in full any wages due to the workers covered by this agreement, any dues or other monies due to the Union, any payments due towards the Funds as provided in Article XIII, the Union may immediately direct the workers to discontinue work until all sums due have been paid in full and/or may immediately institute action at law

or equity on or before an administrative tribunal to obtain payment of such sums. These rights shall be in addition to all other remedies available to the Union."

The Debtor did have in its employment 38 union workers of which three have resigned and it now employs 35 union workers and about 60 other employees.

The Defendant Union complied with the notice requirement of Article XXI of the Collective Bargaining Agreement by notifying the Debtor by registered mail return receipt requested on September 13, 1982 that it was delinquent in payment of the wage increase effective September 1, 1982 and, as of now, the Debtor has failed to pay the Union members the full wages to which they are entitled under the agreement.

On September 10, 1982 the Union notified the National Labor Relations Board that "On or about September 9, 1982, the employer unilaterally and without the agreement of Local 341 repudiated and refused to implement general wage increase provisions of its labor agreement."

The Debtor contends that Articles XXIV and XXV of the Collective Bargaining Agreement provide for arbitration of all disputes, complaints, controversies or claims or grievances relating to it which, in effect, prohibit a strike by the Union. It maintains that it is ready to submit to arbitration and, unless the Union likewise agrees to do so, the Debtor is entitled to a permanent Restraining Order prohibiting any strike by the Union.

■ On the other hand, the Defendant contends that the effect of Articles XXIV and XXV as to arbitration and any action or proceeding in a court of law or equity is negated by Article XXI which specifically contains the language "Notwithstanding Articles XXV and XXIV or any other provision of this agreement. . . ." As a result, the Union contends that the remaining language in Article XXI permits the workers to discontinue work, after proper notice, until all wages due them covered by the agreement are paid.

The Court agrees with this interpretation by the Union of the pertinent articles hereinabove recited. The language of Article XXI is specific and clear and, unless the Debtor pays to its employees which are members of the Union the 35¢ hourly increase effective September 1, 1982, the Union has the right to discontinue work until there has been compliance.

The Defendant further maintains that this Bankruptcy Court does not have subject matter jurisdiction to issue an injunction prohibiting the Union members from striking. It relies principally on *In Re Petrusch v. Teamsters Local 317, et al.,* 667 F.2d 297 (CA 2, 1981) also reported in 5 CBC 2d 909. This case specifically held that a Bankruptcy Court may not enjoin picketing by a union in an attempt by the union to collect a pre-petition debt because the Norris-LaGuardia Act, 29 U.S.C. § 101, et seq., specifically prohibited such injunction by the United States Court. Likewise, in the case of *In Re Sterling Mining Company,* 21 B.R. 66, the Bankruptcy Court recognized that under the Norris-LaGuardia Act a federal court has no jurisdiction to issue restraining orders or injunctions in enumerated circumstances including, but not limited to, work stoppage. That prohibition, the Bankruptcy Court recognized, extends to the Bankruptcy Courts. *Petrusch,* supra. See also *Teamsters Local 807 v. Bohack,* 541 F.2d 312 (2d Cir.1976), cert. denied, 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978).

■■ The Debtor points out that where there is a collective bargaining contract which contains an arbitration clause all disputes must be submitted to arbitration unless, by the clearest language, arbitration is foreclosed. In support it cites *Boys Markets, Inc., v. Retail Clerks Union Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. It is true that in the *Boys Markets, Inc.,* case the United States Supreme Court held that if the collective bargaining agreement contains an arbitration clause the parties may be enjoined until the case is submitted to arbitration. This is clearly an exception to the general rule that a federal court may

not enjoin picketing or a strike where a dispute arises between the parties to the agreement. However, if such an exception is to take effect it must be clearly shown that the arbitration clause applies.

 In the Collective Bargaining Agreement executed between the parties in this case, arbitration was clearly excluded under Article XXI by making the clauses pertaining to arbitration and actions at law or equity inapplicable to the obligation of the Debtor to pay in full any wages due to the workers covered by the Agreement. Since *Boys Markets, Inc.,* is not apposite this Court is precluded under the Norris-LaGuardia Act to assume jurisdiction and issue an injunction against the Union.

There is no provision in the Collective Bargaining Agreement which obligates the Debtor to pay the same increase in wages effective September 1, 1982 to the non-union employees which number approximately 60. Further, neither the parties nor the Court is aware of any rule of law which imposes this obligation on the Debtor. Nevertheless, the Debtor is deeply concerned, and necessarily so, that if it pays the union employees the 35¢ hourly increase as of September 1, 1982, as a practical matter, it will be obliged to grant a similar increase to non-union employees. This would necessarily create a cash flow problem and could conceivably put the Debtor out of business. However, even though the primary purpose of a Chapter 11 proceeding is to rehabilitate the debtor, the Court is in no position to relieve the Debtor of its contractual obligations.

In *Bohak,* supra, the same situation existed and the Court succinctly pointed out at 541 F.2d at 318 the following:

"The argument is made that to allow picketing in the case of this financially troubled debtor is to put it out of business. That is, unfortunately, sometimes the sad outcome when a union and an employer cannot come to terms. But the policy of our labor laws is simply to provide rules for the handling of labor disputes, not to prohibit the use of economic power in the resolution of such disputes.

By filing under Chapter XI an employer does not become clothed in immunity from union action."

### ORDER

Accordingly, upon the foregoing,

IT IS ORDERED as follows:

1. The Temporary Restraining Order entered on September 13, 1982 is hereby vacated.

2. The Debtor shall pay to the Union employees the 35¢ hourly increase which became effective September 1, 1982 under Article VII of the Collective Bargaining Agreement.